# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**MARKWEST LIBERTY MIDSTREAM**
**& RESOURCES, L.L.C.,**

    Plaintiff,

v.                                           **CIVIL ACTION NO. 5:16-CV-118**
                                                   **(BAILEY)**

**BILFINGER WESTCON, INC.,**

    Defendant.

## ORDER GRANTING MOTION TO REMAND

Currently pending before this Court is Plaintiff MarkWest Liberty Midstream & Resources, L.L.C.'s Motion to Remand [Doc. 9], filed August 5, 2016. Defendant Bilfinger Westcon, Inc. responded on August 19, 2016 [Doc. 14], and the plaintiff replied on August 29, 2016 [Doc. 15]. For the reasons that follow, the plaintiff's motion will be granted.

## I.    BACKGROUND

This case was originally filed in the Circuit Court of Wetzel County, West Virginia, on June 13, 2016. [Doc. 1-1]. In the Complaint, the plaintiff alleges breach of contract, negligence, and fraudulent conduct related to the construction of an expansion of its Mobley V natural gas processing facility, and seeks damages and specific performance.

On July 22, 2016, the defendant removed this case to this Court asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. [Doc. 1]. The plaintiff timely filed the pending Motion to Remand on August 5, 2016. [Doc. 9].

## II.    APPLICABLE LAW

"We begin with the undergirding principle that federal courts, unlike most state

1

courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." **Strawn v. AT&T Mobility**, 530 F.3d 293, 296 (4th Cir. 2008) (citations omitted).

Federal courts "'are obliged to construe removal jurisdiction strictly because of the significant federalism concerns implicated' and that 'if federal jurisdiction is doubtful, a remand to state court is necessary.' **Md. Stadium Auth. v. Ellerbe Becket Inc.**, 407 F.3d 255, 260 (4th Cir. 2005) (internal quotation marks, citations, and alterations omitted); see also **Shamrock Oil** [**& Gas Co. v. Sheets**], 313 U.S. at 109 ('Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' (internal quotation marks omitted))." **Palisades Collections LLC v. Shorts**, 552 F.3d 327, 333-34 (4th Cir. 2008).

Defendants seeking removal bear the burden of demonstrating that jurisdiction is proper. See **Strawn**, 530 F.3d at 296-97. "While a defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction in a short plain statement–just as federal jurisdiction is pleaded in a complaint–when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction

2

is proper." *Id*. at 297 (citing **Ellenburg v. Spartan Motors Chassis, Inc.**, 519 F.3d 192, 200 (4th Cir. 2008)).

## III. DISCUSSION

In its motion, the plaintiff argues that it is a citizen of North Dakota, as established by its limited partners residing in North Dakota and as noted in its attached Affidavit [Doc. 10-1], and that because the defendant is also is a citizen of North Dakota, complete diversity of citizenship between the parties does not exist, and the matter should be remanded. The plaintiff also moves this Court for an award of attorneys' fees and costs under 28 U.S.C. § 1447(c). In opposition, the defendant argues that those people relied upon by the plaintiff to defeat diversity are excluded from limited partner status by the existing partnership agreement. It also asserts that the plaintiff is not entitled to attorneys' fees and costs because the defendant's removal was not frivolous and because of its contention that remand is not appropriate.

A corporation is a citizen of both the state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c). The defendant, Bilfinger Westcon, Inc., is a corporation incorporated under the laws of and with its principal place of business in North Dakota. [Doc. 1 at 4-5]. On the other hand, "a limited liability company organized under the laws of a state is not a corporation and cannot be treated as such under [28 U.S.C. § 1332] until Congress says otherwise. **GMAC Commer. Credit, LLC [v. Dillard Dep't Stores, Inc.**, 357 F.3d 827, 829 (8th Cir. 2004)] (quoting **Carden v. Arkoma Assocs.**, 494 U.S. 185, 197 (1990)). It is an unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that of its members." **Gen. Tech.**

*Applications, Inc. v. Exro Ltda*, 388 F.3d 114 (4th Cir. 2004); *see also* **Cent. W.Va. Energy Co. v. Mt. State Carbon, LLC**, 636 F.3d 101, 103 (4th Cir. 2011) ("For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all its members. . ..").  As such, "the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be." **Hunt v. Brooks Run Mining Co., LLC**, 2013 WL 4829322, at *2 (S.D. W.Va. 2013) (citing **Meyerson v. Harrah's East Chicago Casino**, 299 F.3d 616, 617 (7th Cir. 2002)).  Relatedly, a limited partnership is a citizen of each state in which both its general and limited partners are citizens.  *See* **Carden v. Arkoma Assocs.**, 494 U.S. 185 (1990).

Thus, in order to determine the plaintiff's citizenship, it is necessary to examine its organizational structure.  Based upon the representations made in Jonathan M. Allen's sworn affidavit,[1] the plaintiff, MarkWest Liberty Midstream & Resources, LLC, is a Delaware limited liability company that is 100% owned by its sole member, MarkWest Liberty Gathering, LLC ("MarkWest Liberty").  MarkWest Liberty is 100% owned by its sole member, MarkWest Energy Operating Company, LLC ("MarkWest Energy Operating").  MarkWest Energy Operating is 100% owned by its sole member, MarkWest Energy Partners, LP ("MarkWest Energy Partners").  MarkWest Energy Partners is owned by two partners–99% owned by MPLX, LP ("MPLX") and 1% owned by MWE GP, LLC.  MPLX is a publicly-traded master limited partnership; its limited partnership interests are traded on the New York Stock Exchange.  Some of these partnership interests are located in North Dakota.  [*See* Doc. 10-1].

---

[1]Jonathan M. Allen is counsel for MarkWest Energy Partners, LP.  The affidavit was executed pursuant to a separate matter in the Western District of Pennsylvania.

4

The defendant's notice of removal contends in a footnote that these "[p]ublicly-traded interests in MPLX are securities and not partners contemplated by *Carden*, *supra*, for purposes of determining citizenship under 28 U.S.C. § 1332(c)(1). Accordingly, the citizenship of unitholders need not be considered in evaluating the basis for federal subject matter jurisdiction." [Doc. 1 at n.1]. Further, in its opposition to the motion to remand, the defendant cites to MPLX's partnership agreement in arguing that the agreement excludes from the partnership "anyone who purchased their interests through an exchange, instead naming as limited partner the broker, dealer or other nominee." [Doc. 14 at 4].

In *Carden*, the Supreme Court noted that it has continually "firmly resisted" extending the treatment of corporations as citizens for purposes of diversity jurisdiction to other entities. *Carden*, 494 U.S. at 189. Writing for the majority, Justice Scalia wrote:

> [I]n *Great Southern Fire Proof Hotel Co. v Jones*, 177 U.S. 449 (1900), we held that a "limited partnership association" – although possessing "some of the characteristics of a corporation" and deemed a "citizen" by the law creating it – may not be deemed a "citizen" under the jurisdictional rule established for corporations. "That rule must not be extended."

*Id*. (citations omitted). After explaining the one exception to this rule–that being an entity known as a *sociedad en comandita*, created under the civil law of Puerto Rico–the Court reiterated its adherence to "our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members,' 'the several persons composing such association,' 'each of its members.'"[2] *Id*. at 195-96.

The *Carden* Court acknowledged that this adherence may be considered "technical,

---

[2]The Court here cited to *Chapman v. Barney*, 129 U.S. 677, 682 (1889); *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456 (1900); and *United Steelworkers of America v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146 (1965).

precedent-bound, and unresponsive to policy considerations raised by the changing realities of business organization," and that it may be correct that limited partnerships are functionally similar to and should be treated similarly to other types of organizations that have access to federal courts. However, the Court found it appropriate that the question of whether unincorporated organizations "ought to be assimilated to the status of corporations for diversity purposes . . . is properly a matter for legislative consideration which cannot adequately or appropriately be dealt with by this Court." *Id*. at 196 (citing ***United Steelworkers of America v. R.H. Bouligny, Inc.***, 382 U.S. 145, 147, 153 (1965)). Indeed, Congress has made adjustments to the field of diversity policy in the past. Specifically, it revised the rule regarding citizenship of corporations in 1958, at which point it importantly did not provide for "the treatment of artificial entities other than corporations, although the existence of many new, post-***Letson***[3] forms of commercial enterprises . . . must have been obvious." ***Carden***, 494 U.S. at 196-97. In sum, ***Carden*** emphasizes and adheres to the policy of allowing the people's elected representatives to accommodate "diversity jurisdiction to the changing realities of commercial organization" because such a thing can be done more legitimately and intelligently by Congress than the courts. *Id*. at 197.

Going beyond the ***Carden*** rule, courts that have addressed the question of whether to consider master limited partnership unitholders as "members" to be included in a diversity analysis have found in the affirmative. For example and most recently, the Tenth Circuit held that the citizenship of a master limited partnership consists of the *unitholders'*

---

[3] ***Louisville, C. & C. R. Co. v. Letson***, 43 U.S. 497 (1844) (holding that a corporation is "capable of being treated as a citizen of [the State which created it], as much as a natural person").

6

citizenship, explaining that the ***Carden*** rule applies to master limited partnerships because they are unincorporated associations formed under state law as limited partnerships or limited liability companies, and are classified as partnerships for federal income tax purposes. ***Grynberg v. Kinder Morgan Energy, LP***, 805 F.3d 901, 906 (10th Cir. 2015). Shortly before ***Grynberg***, the District of Minnesota rejected an argument to exclude unitholders from diversity jurisdiction because, although "public unitholders may be more functionally equivalent to stockholders in a corporation," the "economic reality of the unitholders' roles and positions is immaterial to the [***Carden***] Court's holding," and "the court is bound to follow ***Carden***," and thus must look to the citizenship of all the master limited partnership's partners, "including the public unitholders." ***Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn., LLC***, 103 F.Supp.3d 1000, 1010-11 (D. Minn. 2015). Several other courts have also found that a master limited partnership's unitholders must be included in a diversity analysis.[4]

Further, although the Fourth Circuit itself has not specifically addressed the question of whether a master limited partnership's unitholders are to be classified as limited partners for purposes of a diversity analysis, the query was touched upon by the District Court for

---

[4] See ***Gonyer v. Enbridge Energy, LP***, 2014 WL 1255915 (W.D. Mich. 2014) (dismissing the complaint because the defendant's ultimate parent, a master limited partnership, "has its own limited partners or unitholders who are citizens of Michigan" and the court "must look beyond [the master limited partnership] and consider the citizenship of the [master limited partnership's] unitholders" for its diversity analysis); ***Trafigura AG v. Enter. Prods. Operating LLC***, 995 F.Supp.2d 641 (S.D. Tex. 2014) (finding that the court lacked subject matter jurisdiction because complete diversity was lacking where a party was a master limited partnership whose citizenship was determined by the citizenship of its various unitholders); ***Vosburg v. Williams Field Servs. Co., LLC***, 2011 WL 3881277 (M.D. Pa. 2011) (finding that the master limited partnership's citizenship is derived from the totality of its membership, including its limited partners).

7

the District of Maryland. In **Wood v. Walton**, 2010 WL 458574 (D. Md. 2010), the court, in denying the plaintiff's motion to remand for reasons dissimilar to the instant matter, noted that one of the original parties to the suit, KMEP, was a citizen of Maryland and thus had destroyed diversity jurisdiction until the claims against it were dropped. *Id*. at *5-6. The court explained that KMEP was a Delaware master limited partnership, which is "a limited partnership whose interests (known as 'common units') are publicly traded," and that at the time the complaint was filed, "at least one KMEP limited partner was a citizen of Maryland." *Id*. at n.3. The court supported this explanation by citing to an affidavit of William R. Dorsey, III, who declared that he had "held limited partnership common units in [KMEP], as a limited partner of KMEP," for the time period pertinent to the diversity analysis.[5] In addition to this affidavit, the defendants submitted an affidavit by the corporate secretary of KMEP's general partner, which averred that, for the pertinent time period, KMEP had "common unit holders of record with Maryland addresses" that destroyed diversity.[6] Based upon the court's ruling, it is apparent that the court, without going into a highly technical scrutinization of KMEP's partnership agreement, considered these common unitholders to be limited partners whose citizenship was relevant to the diversity analysis.

The rationale in these several cases is persuasive, and this Court concurs with the courts' findings. These, coupled with the fact that the plaintiff considers unitholders of its own limited partner interests to be limited partners, persuades this Court that the

---

[5]United States District Court for the District of Maryland, Northern Division, Civil Action No.: WDQ-09-3398 – Doc. 21-2. Accessed via PACER.

[6]United States District Court for the District of Maryland, Northern Division, Civil Action No.: WDQ-09-3398 – Doc. 21-1. Accessed via PACER.

unitholders are to be construed as limited partners for purposes of a diversity analysis. The defendant's singular reliance on *Stolte* is unconvincing. There, the publicly-traded interests at issue were beneficial assignment certificates issued by a *corporation* rather than limited partnership interests issued by a master limited partnership. ***Stolte, Inc. v. RPP Ltd. Dividend Housing Ass'n Ltd. Partnership***, 1991 U.S. Dist. LEXIS 1695, at *10 (E.D. Mich. 1991) ("The [beneficial assignment certificates] were issued by Liberty Credit Assignor III, a Delaware corporation."). The district court found that the "citizenship of the *corporation* which issued the Beneficial Assignment Certificates must be considered in this diversity analysis" and that the "citizenship of the individual [beneficial assignment certificate] holders need not be considered." *Id*. at *11 (emphasis added). Thus, because corporations and unincorporated entities such as a limited partnership are treated differently in a diversity analysis, *Stolte* is distinguishable from the instant matter, and its guidance is inapplicable.

Although a finding that each limited partnership interest unitholder's citizenship is relevant for diversity purposes enables the possibility that an unincorporated entity may be considered as a citizen of all fifty states, particularly in light of the averment that MPLX "has limited partners all over the country" [Doc. 10-1 at ¶ 9], such a policy consideration is not within this Court's purview. As indicated by ***Carden***, it is up to Congress to consider revisions to diversity policy, and Congress has not made any adjustments to the rule for determining citizenship of unincorporated entities such that would suit the defendant here. Specifically, it has not stated that a master limited partnership, itself an unincorporated entity, should be treated as a corporation or any other entity in a diversity analysis. This

Court declines to extend the **Carden** rule and expand limited federal jurisdiction to do the same.

Furthermore, the defendant's attempt to dissect MPLX's partnership agreement is flawed. It misinterprets aspects of the agreement's provisions and takes certain language out of context. As an example, in its opposition to the motion to remand, the defendant cites to Section 4.3, which discusses Record Holders, to argue that the purchaser of the partnership interest is not the limited partner, but rather it is the broker, dealer, or other nominee. As noted by the plaintiff's reply, this emphasized text does not include the antecedent language, which states "[w]ithout limiting the foregoing." This language omitted by the defendant negates any exclusivity as to limited partnership the defendant attempts to assert, as the "foregoing" indicates that all unitholders–not just the broker, dealer, or other nominee–may be partners. [*See* Doc. 15 at 8].

As another example, the defendant discusses Section 10.1(b), which provides:

> By acceptance of any Limited Partner Interests transferred in accordance with Article IV or acceptance of any Limited Partner Interests issued pursuant to Article V or pursuant to a merger, consolidation or conversion pursuant to Article XIV, and except as provided in Section 4.9, each transferee of, or other such Person acquiring, a Limited Partner Interest (including any nominee, agent or representative acquiring such Limited Partner Interests for the account of another Person or Group, who shall be subject to Section 10.1(c) below)
> (i) shall be admitted to the Partnership as a Limited Partner with respect to the Limited Partner Interests so transferred or issued to such Person when such Person becomes the Record Holder of the Limited Partner Interests so transferred or acquired,
> (ii) shall become bound, and shall be deemed to have agreed to be bound, by the terms of this Agreement,
> (iii) shall be deemed to represent that the transferee or acquirer has the capacity, power, and authority to enter into this Agreement and
> (iv) shall be deemed to make any consents, acknowledgments or waivers contained in this Agreement, all with or without execution of this Agreement by such Person.

The transfer of any Limited Partner Interests and the admission of any new Limited

> Partner shall not constitute an amendment to this Agreement. A Person may become a Limited Partner without the consent or approval of any of the Partners. A Person may not become a Limited Partner without acquiring a Limited Partner Interest and becoming the Record Holder of such Limited Partner Interest. The rights and obligations of a Person who is an Ineligible Holder shall be determined in accordance with Section 4.9.

[Doc. 14-1 at 152]. A plain reading of this section indicates that anyone who acquires a limited partner interest becomes a limited partner once that acquirer becomes the record holder of the limited partner interest, as defined in Section 4.3. It is not exclusively limited to the broker, dealer, or nominee, though they are included in the limited partner collective. Moreover, the defendant's citation to 10.1(b) in its opposition to the motion to remand is incomplete and incorrect. Where Section 10.1(b)(ii) should begin, it states "that when a broker, dealer or other nominee acquires an interest for another, and expressly in the context of an exchange traded interest, that such nominees 'shall be admitted to the Partnership as a Limited Partner with respect to the Limited Partner interests so transferred or issues [*sic*] . . ..'" [Doc. 14 at 6]. This language is not only absent from Section 10.1(b), it does not appear to be anywhere in the Partnership Agreement. The defendant's attempts to distort the Partnership Agreement's text to suit its argument are ineffectual.

In sum, this Court finds that the citizenship of the unitholders of publicly-traded partnership interests in a master limited partnership is relevant to a diversity analysis. Thus, pursuant to ***Carden***, because the plaintiff has some partnership interests in North Dakota, and the defendant is also a citizen of North Dakota, complete diversity does not exist between the parties. Accordingly, this Court finds that the defendant's footnote in its notice of removal does not sufficiently allege that federal jurisdiction is proper, nor has the

defendant met its burden of successfully demonstrating this Court's jurisdiction over the matter, and remand is appropriate.

As a final matter, the plaintiff's motion to remand avers that it is entitled to its costs and attorneys' fees incurred as a result of this removal, pursuant to 28 U.S.C. § 1447(c). [Doc. 10 at 8]. Title 28, United States Code, Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." With respect to the award of attorney's fees and costs, the United States Court of Appeals for the Fourth Circuit has found that 28 U.S.C. § 1447(c) "provides the district court with discretion to award fees when remanding a case" where it finds such awards appropriate. *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). This Court finds that an award of attorneys' fees and costs is not appropriate in this case and declines to award the same.

## IV.    CONCLUSION

Based upon the foregoing, this Court hereby **GRANTS** the plaintiff's Motion to Remand **[Doc. 9]**. Accordingly, this action is hereby **REMANDED** to the Circuit Court of Wetzel County, West Virginia.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein and to the Clerk of the Circuit Court of Wetzel County, West Virginia.

**DATED**: November 4, 2016.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE